IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OKLAHOMA

RYAN ALINGER, et. al., )
)
        Plaintiffs, )
v. )   Case No. 17-cv-405-TCK-mjx
)
LIBERTY INSURANCE CORPORATION, )
)
        Defendant. )

## AMENDED COMPLAINT TO NAME PROPER DEFENDANT

COME NOW the Plaintiffs, by and through their undersigned counsel, Scott L. Tully of The Tully Law Firm, and for their cause of action against Defendant, state as follows:

1. The Plaintiffs are citizens and residents of Tulsa County, State of Oklahoma.

2. The Defendant, Liberty Insurance Corporation is an insurance company with its principal place of business in Boston, MA, incorporated in Delaware and regularly does business in the State of Oklahoma.

3. Venue is proper with this Court as all events giving rise to the causes of action contained herein occurred in Tulsa County, State of Oklahoma.

4. There exists complete diversity of citizenship between the parties and a dispute involving an amount in controversy exceeding $75,000.00, thereby invoking the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1332.

5. Plaintiffs applied for, and purchased, a homeowner's insurance policy from Defendant prior to the loss on March 20, 2016.

6. Defendant issued policy number H3729811409940 to Plaintiffs, which provides certain benefits in the event of a homeowner's loss, including loss resulting from wind damage.

7. Following the loss on March 30, 2016, Plaintiffs filed the requisite paperwork, and notified Defendant of the loss to collect the proceeds and benefits due and under the policy issued by Defendant.

8. Upon making presentation of the claim, Defendant failed to fully pay benefits due and owing under the policy, delayed payments, mischaracterized depreciation items and intentionally mischaracterized items according to the policy.

9. Liberty Mutual sent Plaintiffs a letter dated April 8, 2016 stating that the total loss was $29,888.04 with $10,680.81 as non-recoverable depreciation.

10. On April 13, 2016, Reliant Public Adjusters advised Defendant of its representation of Plaintiffs.

11. On May 12, 2016 Reliant advised Defendant that its estimate had mislabeled items as non-recoverable depreciation in its prior estimate and payment, and the total estimate should actually be $63,819.97.

12. On May 20, 2016 Defendant advised Reliant that some of the items had been changed to reflect recoverable depreciation rather than non-recoverable, however, all were not properly corrected.

13. On May 25, 2016 Reliant advised Defendant that it wished to invoke the policy provision of appraisal on behalf of Plaintiffs.

14. On June 8, 2016 Defendant tendered its appraiser.

15. On June 17, 2016 Plaintiff tendered their appraiser.

16. Estimates were provided to the umpire by Liberty of $49,290.29 and Reliant submitted $63,303.24.

17. On September 26, 2016 the appraisal umpire, Victor Hollingsworth, issued his report and award of $65,677.88.

18. On October 5, 2016 Reliant sent a letter to Liberty requesting that the umpire award be reviewed and discussed.

19. On November 18, 2016 Liberty provided an estimate of the exact number of the umpire of $65,677.88 but continued to over depreciate and mischaracterize items of personal property.

20. The Plaintiffs obtained previous counsel, Larry Bache, who sent a letter of December 19, 2016 advising of the errors in the estimate of Liberty.

21. Liberty responded by letter of December 21, 2016 indicating it would not change its estimate for the errors pointed out by Reliant and Larry Bache.

22. On March 24, 2017 counsel (Scott Tully) for Plaintiffs provided a letter to Defendant requesting all information regarding the handling of the claim, including all correspondence to and from, Plaintiff's and any of their representatives.

23. On April 3, 2017, Liberty provided some information requested by attorney Tully, but not all.

24. Defendant, through its agents and representatives, has failed to comply with the requests of Plaintiff's counsel, although the requests were not privileged, nor proprietary in any manner.

25. Plaintiff's counsel made repeated requests for said information to be able to more thoroughly assess the bad faith conduct of Defendant in handling this matter.

26. Defendant continues to fail to pay the appropriate amounts due in this loss.

## COUNT I: BREACH OF CONTRACT

27. Plaintiff reassert and restate the allegations set forth in paragraphs 1-26 as if fully set forth herein.

28. Plaintiff alleges Defendant improperly breached the insurance contract by failing to fully pay benefits due thereunder and denying portions of the claim.

29. Plaintiffs have suffered economic damages in the amount of $13,452.17 as a result of this breach of contract.

## COUNT II: BAD FAITH AND BREACH OF THE DUTY OF GOOD FAITH CLAIM HANDLING

30. Plaintiffs reassert and restate the allegations set forth in paragraphs 1-29 as if fully set forth herein.

31. The improper refusal to pay policy benefits and failure to properly and thoroughly investigate Plaintiffs' claims by Defendant exhibits a lack of good faith claims handling.

32. Defendant has low-balled the estimate and over depreciated items as well as mischaracterizes items of personal property.

33. Defendant has failed to revise its estimate when provided with clear reasoning to do so.

34. Defendant has delayed, discounted and denied proper payment to Plaintiff for this loss.

35. Plaintiff has had bad faith expert Richard N. Cary review the materials of this claim, and opines that Defendant's conduct has risen to the level of bad faith (See Exhibit 1).

36. The refusal to properly pay policy benefits by Defendant exhibits bad faith claims handling conduct contrary to the laws of Oklahoma.

WHEREFORE, premises considered, Plaintiff respectfully requests this Court grant Plaintiff judgment for all policy benefits together with punitive damages in excess of $75,000.00, along with any other such further relief as the Court deems just and reasonable including, but not limited to, reasonable attorney fees and costs and all other relief of any type or nature to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ Scott Tully
Scott L. Tully   OBA#13606
P.O. Box 2141
Broken Arrow, OK 74011
(918) 872-8800
(866) 224-2303  Fax
tullylawfirm@gmail.com

ATTORNEY LIEN CLAIMED

# EXHIBIT 1

**Richard N. Cary**
12120 Silver Sun Dr.
Oklahoma City, OK 73162
405-819-8788

April 24, 2017

Mr. Scott Tully, Attorney at Law
P.O. Box 2141
Broken Arrow, OK 74013

(Transmitted by email)

RE:   Ronald & Laura Alinger

Dear Mr. Tully:

This will confirm that you asked me to review the claims handling followed by Liberty Mutual Insurance Company [hereinafter referred to as Liberty Mutual] in this case to see if the steps and procedures which Liberty Mutual followed were reasonable and in compliance with accepted insurance industry standards.

**Facts:** Mr. & Mrs. Alinger own a dwelling at 18770 N Twin Creeks Dr., Owasso, OK. The dwelling was insured by Liberty Mutual under policy number H3729811409940. Mr. and Mrs. Alinger filed a claim for tornado damage which occurred on or about 03/30/16. Liberty Mutual set up a claim which is identified as claim number 033523077-01.

Liberty Mutual inspected the property and found storm damage to various parts of the dwelling, contents, and other structures. They prepared an estimate or damage totaling $31,466.20. Mr. and Mrs. Alinger knew the cost of repairs would exceed that amount and; therefore, they pursued additional monies from Liberty Mutual to indemnify them for the total damages.

Mr. & Mrs. Alinger hired a public adjuster to assist in their claim against Liberty Mutual. His name is Cecil Stubblefied of Republic Public Insurance Adjusters. Mr. Stubblefied pointed out:

a. The roof could not be repaired per the estimate Liberty Mutual prepared
b. Liberty Mutual did not include items that were damaged on their estimate
c. Liberty Mutual was wrong when they said items were structures when they were actually personal property
d. Heavy depreciation was not appropriate
e. Liberty Mutual wrongfully omitted general contractor's overhead and profit
f. Liberty Mutual refused to comply with the appraisal award

Liberty Mutual refused to settle with Mr. Stubblefield on behalf of Mr. & Mrs. Alinger. Mr. Stubblefield demanded an appraisal to establish the correct amount of damage to the property. The appraisal award totaled $65,677.88.

**My Opinions:**

1. Liberty Mutual was guilty of breach of contract for attempting to low-ball the settlement in an attempt to save money. Every insured should expect that when they have a legitimate claim, the carrier with be fair and reasonable in the adjustment of the claim. Liberty Mutual stepped well beyond the boundary of good faith and fair dealing when they attempted to save more than $30,000 on this claim.

2. Liberty Mutual was not fair in the way they applied depreciation. It is widely known within the insurance industry that only a certain percentage of insureds ever file a claim for the depreciation that is withheld when the actual cash value payment is issued. If the insured does not make that replacement cost claim, that money stays with the insurance company which boosts their net profit. By applying heavy depreciation, it would have benefitted Liberty Mutual even more if a claim for the depreciation was never made.

3. Liberty Mutual knew their offer was never going to be accepted by their insureds. They had every opportunity to reevaluate the claim or file for appraisal if they believed they were right in evaluating the damages. They refused to do so because they knew if they did and the award was more than their offer, they would be bound by the award. Any time a carrier is confident they are right in their evaluation of damages, they should want to file for appraisal to resolve the claim with minimum expense. The fact Liberty Mutual took a "wait and see" approach speaks volumes.

4. Liberty Mutual omitted a payment for general contractor's overhead and profit even though the claim met the criteria for including a payment for that policy benefit. They failed to meet their duty of good faith and fair dealing by withholding monies they know or should know were due and owing to their insured. GCOP is 20% of the ACV and should have been included with the payment and it was wrong to omit that amount as part of the ACV payment. Fortunately, GCOP was included during the appraisal process but that does not negate the attempt by Liberty Mutual to use such a tactic to save money.

5. Liberty Mutual failed to include all the damages within their estimate. Because of everything else that Liberty Mutual did to save money, the only conclusion one can reach is they intentionally left off damaged items in an attempt to save money. Whenever an insurance company saves money from a claim, it is at their insured's expense.

6. It is inconceivable that Liberty Mutual did not know that calling personal property other structures was wrong. By trying to change how the property is categorized in the policy allowed Liberty Mutual to say those items were subject to ACV only and replacement cost coverage did not apply. That was another attempt to save money on this claim by only limiting those items to ACV when the insured was clearly entitled to recover the depreciation.

7. Liberty Mutual had a duty to make sure their adjusters were properly trained and they would follow the wording of the policy as well as acceptable insurance industry standards in the handling of insurance claims. This was not a complicated claim. It was a routine claim that should have been investigated thoroughly, evaluated property, and settled timely. The problems that were created by Liberty Mutual were not simple mistakes. The file gives every reason to believe the position that Liberty Mutual took on the issues described above were well thought out and intentional.

**Conclusion:** Liberty Mutual was given every opportunity to revise their adjustment and pay the correct amount but they refused to do so. A simple definition of bad faith is when an insurance company delays, discounts, or denies payment to their insured without a reasonable basis for doing so. In this case, Liberty Mutual had a duty to pay substantially more than their original offer and refused to do so. That conduct certainly rises to the level of bad faith.

If you have any questions, please do not hesitate to give me a call.

Sincerely,

Richard N. Cary